**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

```
GINA B.,                          :
                                  :
        Plaintiff,                :
                                  :
v.                                :      Civil No. 3:24-cv-1883(RAR)
                                  :
MARTIN O'MALLEY,                  :
Commissioner of Social            :
Security,                         :
                                  :
        Defendant.                :
```

RULING ON PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND AND
DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Gina B. ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405 (g). The Commissioner denied Plaintiff's application for Social Security Disability Benefits in a decision dated December 21, 2023. Plaintiff timely appealed to this Court. Currently pending are Plaintiff's Motion for an Order Reversing the Decision of the Commissioner or, in the Alternative, Motion for Remand for a Hearing, dkt. #19, and Defendant's Motion to Affirm the Decision of the Commissioner, dkt. #24. For the reasons that follow, Plaintiff's Motion to Reverse, or in the Alternative, Remand, is DENIED and the Commissioner's Motion to Affirm is GRANTED.

1

I.    <u>LEGAL STANDARD</u>

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive." 42 U.S.C. § 405(g). Accordingly, the court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.; Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*[3]

II.  PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits by way of a Title II application, citing alleged disability beginning August 1, 2019. (R. 31.)[4] Plaintiff's claim was initially denied on February 9, 2023, and upon reconsideration on March 7, 2023. (R. 31.) Plaintiff subsequently filed a request for a hearing, which was held on November 9, 2023 by Administrative Law Judge Alexander Borré. (R. 48-86.) Following the hearing, the ALJ issued a written decision denying plaintiff's application on December 21, 2023. (R. 28-47.) Plaintiff thereafter sought review by the Appeals Council, which was denied on September 26, 2024.

---

claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. §416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to (1) "whether such work exists in the immediate area in which [the claimant] lives;" (2) "whether a specific job vacancy exists for [the claimant];" or (3) "whether [the claimant] would be hired if he applied for work." *Id.*

[4] The Court cites pages within the administrative record as "R. ___."

(R. 1-6.) Plaintiff then filed this action on November 26, 2024, seeking judicial review of the denial. (Dkt. #1.)

III. THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged onset date of August 1, 2019, through the date of Plaintiff's date last insured ("DLI"), December 31, 2021. (R. 28-47). At Step One, the ALJ determined that plaintiff had not engaged in substantial gainful activity between her alleged onset date and the DLI. (R. 34.)

At Step Two, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), fibromyalgia, and postural orthostatic tachycardia syndrome ("POTS").[5] (R. 34.)

At Step Three, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (R. 34-36.) Specifically, the ALJ determined that Plaintiff's POTS did not meet or medically equal Listing 4.05 (pertaining to recurrent arrythmias) because there was "no evidence of electrolyte abnormalities, digitalis glycoside, or antiarrhythmic drug

---

[5] The ALJ found that Plaintiff had two non-severe impairments: headaches and asthma. (R. 34.)

toxicity resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope." (R. 35.) The ALJ next determined that fibromyalgia did not meet a listing because there was "no evidence that fibromyalgia medically equals a listing, either individually or in combination with another impairment." *Id.* Finally, the ALJ determined that Plaintiff's mental impairments did not meet or medically equal Listings 12.04, 12.06, and 12.15. *Id.* In reaching this conclusion, the ALJ found that Plaintiff did not meet "paragraph B" criteria, which requires a mental impairment to result in one extreme limitation or two marked limitations. *Id.* at 35-36.

At Step Four, the ALJ found that through the DLI, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b). (R. 36.) Except, Plaintiff:

> [M]ust avoid extreme cold and extreme heat; can never climb ladders, ropes, or scaffolds, and cannot tolerate hazards such as chainsaws and open moving machinery. She must avoid concentrated exposure to dusts, gases, fumes, and pulmonary irritants She can understand, remember, and carry out simple instructions with occasional contact with the public, coworkers, and supervisors in an environment with occasional simple changes.

(R. 36.).

Finally, at Step Five, the ALJ concluded that Plaintiff was not able to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R. 41-43.)

IV.  <u>DISCUSSION</u>

In support of her Motion to Reverse or Remand the Decision of the Commissioner, Plaintiff argues that there are two broad areas where the ALJ has erred. (Dkt. #19-1.) First, Plaintiff argues that the ALJ did not properly rely on the medical evidence to formulate the decision. (Dkt. #19-1 at 22-25.) As part of this argument, Plaintiff contends that the ALJ did not satisfy his duty to develop the record with medical opinion evidence, and, in doing so, the ALJ erroneously reached an independent layperson's conclusion. *Id.* at 24-25. Second, Plaintiff argues that the ALJ's RFC determination is not supported by the evidence and does not accurately reflect Plaintiff's symptoms. *Id.* at 25-29.[6]

The Commissioner responds to Plaintiff's arguments by generally asserting that the ALJ properly evaluated the medical evidence in the record and that those evaluations are supported by substantial evidence. (Dkt. #24 at 5-10.) Having properly evaluated the medical opinion evidence, the Commissioner argues that the RFC set forth by the ALJ is supported by substantial evidence and properly accounts for plaintiff's mental and physical limitations. *Id.*

---

[6] While stylized as two distinct arguments in Plaintiff's brief, *see* dkt. #19-1, the Court construes these arguments as essentially building off one another and will address them as a single argument.

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's RFC is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

In formulating an appropriate RFC, an ALJ is required to review and evaluate the medical records and opinions. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 416.1920c(a). The ALJ will consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" *Id.* §§ 404.1520c(c), 416.920c(c). The ALJ must explain how he considered the "supportability" and "consistency" factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ

finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b), 416.920.

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

If the court does not find that the RFC determination was subject to a legal error, the issue becomes one of substantial evidence. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, [the court] must decide whether substantial evidence supports the ALJ's decision." *Bonet v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

It is well established that "an ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion — rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal." *Vanessa N. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00913 EAW, 2024 WL 4131242, at *5 (W.D.N.Y. Sept. 9, 2024) (citing *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 444, 448 (2d Cir. 2012)).

Importantly, a reviewing court does not "decide the facts anew, nor [] reweigh the facts, nor [] substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." *Bellamy v. Apfel*, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). "Indeed, [t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." *Gina C. v. Comm'r of Soc. Sec. Admin.*, No. 3:21CV00423(SALM), 2022 WL 167922, at *10 (D. Conn. Jan. 18, 2022).

The ALJ in this case formulated an RFC finding that Plaintiff was capable of light work, except Plaintiff:

> [M]ust avoid extreme cold and extreme heat; can never climb ladders, ropes, or scaffolds, and cannot tolerate hazards such as chainsaws and open moving machinery. She must avoid concentrated exposure to dusts, gases, fumes, and pulmonary irritants. She can understand, remember, and carry out simple instructions with occasional

contact with the public, coworkers, and supervisors in an environment with occasional simple changes.

(R. 36.)

In making this finding, the ALJ, as is required, evaluated the medical evidence and considered all of Plaintiff's complaints and symptoms. First, the ALJ considered Plaintiff's subjective complaints, including complaints from the administrative hearing. (R. 37.) The ALJ specifically noted that, due to POTS, Plaintiff alleges that she suffers from joint and muscle pain, fatigue, spasms, numbness, and decreased mobility, and is unable to stand or walk for more than 2-5 minutes or engage in bending "due to dangerous heart rate levels contributing to blackouts." (R. 37 (citing Ex. 14E).) With respect to Plaintiff's mental health impairments, the ALJ noted that Plaintiff alleges having "poor memory and concentration, brain fog, [and] agoraphobia." *Id.* As a result, Plaintiff relies substantially on her husband to take care of household tasks. *Id.* (citing Ex. 14E; R. 65-66.) Finally, the ALJ noted that Plaintiff's husband testified at the hearing that Plaintiff experiences daily vomiting, "sees spots in 20-minute episodes," and has little social interaction. *Id.; see also* 77-78.

While the ALJ noted that Plaintiff's medical impairments can reasonably be expected to cause Plaintiff's alleged symptoms, the ALJ explained that Plaintiff's statements regarding the intensity,

11

persistence, and limiting effects of these symptoms are not fully consistent with the evidence of record. (R. 37.)

Turning to the evidence of record, the ALJ reviewed medical records from APT Foundation, Inc. (R. 38; *see also* Exs. 1F & 6F.) The Court first turns to the treatment records as they pertain to Plaintiff's fibromyalgia and POTS limitations. The ALJ noted that the APT Foundation records showed that Plaintiff's physical exams were generally unremarkable and reported that Plaintiff had a "steady, coordinated gait, and her treatment consisted of primary care only." (R. 38 (citing Exs. 1F; 6F).) The ALJ also noted that Plaintiff did not frequently present with fibromyalgia complaints, "other than intermittent fatigue and symptomatic worsening during weather extremes." *Id.* Plaintiff used stretches, low-dose gabapentin, and meloxicam as management, and the ALJ noted that the record states Plaintiff was stable through most of 2023. *Id.*

The ALJ went on to note that Plaintiff reported 1-5 minute episodes of dizziness when standing in late 2021, and Plaintiff's primary care provider advised her to increase her fluid and salt intake "and to trial Midodrine and propranolol for suspected POTS, while continuing to note steady coordinated gait." (R. 38 (citing Ex. 1F at R. 452-53, 458).) The ALJ noted that the treatment record after the DLI showed Plaintiff had general stability with minimal treatment. *Id.*

The Court pauses here to highlight that the ALJ spent considerable time reviewing and analyzing the APT Foundation treatment records related to Plaintiff's physical limitations. *See* R. 38, 40-41. Contrary to Plaintiff's assertion that the ALJ's decision "is not based on anything," dkt. #19-1 at 25, the ALJ considered the limiting effects of Plaintiff's fibromyalgia and POTS—as set forth in the treatment records—and incorporated them into his RFC determination. For example, the treatment records indicated that Plaintiff's symptoms worsened during extreme temperatures, R. 38, and the ALJ's RFC includes a limitation that Plaintiff "must avoid extreme cold and extreme heat." (R. 36.) Likewise, the ALJ emphasized the consistent, stable nature of Plaintiff's treatment regimen throughout the relevant time period (prior to the date last insured). *See* R. 38. And in *Penfield v. Colvin*, the Second Circuit found that evidence of a Plaintiff's conservative treatment regimen supported an ALJ's findings that symptoms were not as severe as alleged. *Penfield v. Colvin*, 563 Fed. Appx. 839, 840-41 (2d Cir. 2014).

The Court next turns to the ALJ's review of Plaintiff's APT Foundation medical records as they pertain to her mental limitations (anxiety disorder, major depressive disorder, and PTSD). The ALJ notes that, prior to the alleged onset date, Plaintiff established primary care at APT Foundation and was prescribed several medications to treat anxiety, depression,

insomnia, and nightmares. (R. 38 (citing Ex. 1F at R. 313-14.)) Plaintiff also reported using marijuana daily for both pain and anxiety relief. *Id.* According to the ALJ, Plaintiff reported that her moods were better controlled with clonazepam, Lexapro, and Vraylar, and Plaintiff's primary care provider noted she was consistently alert and present. (R. 38 (citing Ex. 1F).) By late 2019, the ALJ notes that Plaintiff reported her mood was much improved and that she was getting a lot done. (R. 39 (citing Ex. 1F at R. 353).)

The ALJ noted that Plaintiff occasionally reported periods of heightened anxiety due to several stressors, including the pandemic, her wedding, relocating, and family deaths, but noted that Plaintiff's primary care provider reported Plaintiff was otherwise functional and stable, and often cared for her husband. (R. 39 (citing Ex. 1F).) The ALJ noted that Plaintiff began experiencing increasing fatigue in late 2020, which was attributed to her medications, underlying mood disorder, and, potentially, her cannabis use; Plaintiff also began relying on her husband to complete daily activities due to agoraphobia. *Id.* (citing Ex. 1F at R. 400-01, 422, 437, 452, 467, 472, 497).)

Continuing with the review of the record, the ALJ next discussed Plaintiff's consultative psychological examination with Dr. Erica Preston in March of 2022. (R. 39.) Dr. Preston "observed depressed mood and a mildly constricted affect, but noted she was

14

otherwise polite, cooperative, casually dressed and adequately groomed with no obvious signs of cognitive impairment despite mildly impaired memory," as noted by the ALJ. *Id.* (citing Ex. 2F.) The ALJ also noted that Dr. Preston found Plaintiff showed intact attention, fair insight, good judgment, and had a goal-oriented thought process. *Id.*

To conclude the review of the medical evidence in forming the RFC, the ALJ analyzed the medical opinion evidence in the record. The record contained six such opinions: two from State agency medical consultants Dr. Ken Murphy, M.D. and Dr. Bich Duong, M.D., two from State agency psychological consultants Janine Swanson and Dr. Warren Leib, one from Dr. Preston, and one from Benjamin Mahoney, APRN,

The Court first turns to the ALJ's analysis of the State agency medical and psychological consultants. As to State agency medical consultants Dr. Murphy and Dr. Duong, the ALJ concluded that the opinions were not persuasive. (R. 39.) The State agency medical consultants found that Plaintiff could perform medium work and should avoid all cold exposure. (R. 39.) However, the ALJ noted that, although the record shows generally conservative treatment for Plaintiff's fibromyalgia and POTS, Plaintiff's variable symptoms, such as heat and cold intolerance, support greater limitations. (R. 39.)

15

The ALJ determined that the opinions of State agency psychological consultants Janine Swanson and Dr. Warren Leib were also not persuasive. (R. 40.) The State agency psychological consultants concluded that there was insufficient evidence to make a determination. *See* exs. 2A; 4A. The ALJ noted that this finding is not supported by the record, which shows that Plaintiff's mental impairments were largely stable due to treatment in 2019 through the DLI. (R. 40.) Plaintiff does not contest the ALJ's findings regarding the State agency medical and psychological consultants "because the State Agency did not have proper medical records." (Dkt. #19-1 at 24.)[7]

The ALJ found the opinion of consultative psychological examiner Dr. Preston to be partially persuasive. (R. 40.) The ALJ noted that the lack of Plaintiff's cognitive limitations is supported by Dr. Preston's "findings of generally intact memory, attention, and concentration," and the ALJ also noted that these findings were consistent with the primary care record. (R. 40 (citing Exs. 1F, 6F).) However, the ALJ noted that Dr. Preston's social limitation findings were vague, particularly in light of the reports of irritability and isolative tendencies in the medical treatment record. *Id.* Specifically, Dr. Preston concluded that

---

[7] Plaintiff does argue that the ALJ's rejection of the state medical and psychological consultants underscores a larger flaw in the decision: that the ALJ did not properly develop the record. (Dkt. #19-1 at 24.) The Court addresses this argument in a later portion of this Order.

"there *may* be a moderate impairment in the [Plaintiff's] ability to adhere to a regular, fulltime work schedule," R. 520 (emphasis added), but the ALJ notes that this finding is vague and fails to provide a functional assessment of Plaintiff's limitations. (R. 40.)

The ALJ finds Dr. Preston's opinion persuasive "to the extent that the record does show a moderate limitation in adapting or managing oneself," given Plaintiff's variable anxiety and depression but fair insight and judgment (as noted in the treatment record). *Id.* (citing Exs. 1F; 2F; 6F.)

Plaintiff argues that the ALJ's "partially persuasive" finding is inconsistent because the ALJ found a moderate impairment in one portion of the opinion to be "vague" and a moderate impairment in another portion to be "persuasive." (Dkt. #19-1 at 23.) However, the Commissioner correctly points out that an ALJ "is entitled to reject those portions of a medical opinion that are not supported by and even contrary to the evidence of record." (Dkt. #23 at 5 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).) As discussed above, the ALJ here articulated his reasoning for finding specific portions of Dr. Preston's opinion persuasive and others not persuasive. (R. 40.) The ALJ supported his "partially persuasive" finding with reference to medical evidence in the record, including the APT Foundation treatment records. (R. 40 (citing Exs. 1F, 6F).)

In light of Dr. Preston's opinion and the APT Foundation treatment records, the ALJ did account for some mental limitations in the RFC. The ALJ limited Plaintiff to "simple instructions with occasional contact with the public, coworkers, and supervisors in an environment with occasional simple changes." (R. 36.) Contrary to Plaintiff's argument, the ALJ properly evaluated the mental health evidence provided in the record and developed an RFC which accounted for the limitations found in the medical opinion that were properly supported and consistent with the record.

Plaintiff also takes issue with the ALJ's treatment of the medical opinions of Benjamin Mahoney, APRN. The opinions of Mahoney span from January through November 2023, and they largely discuss Plaintiff's limitations due to POTS. (R. 40-41 (citing Exs. 4F, 5F, 7F).) Although the ALJ found the opinions of Mahoney to be generally persuasive and consistent with Plaintiff's complaints, the ALJ noted that the opinions were well after the DLI, did not provide a function-by-function assessment of her physical symptoms, included statements on issues reserved for the Commissioner, and were inconsistent with the primary care record. (R. 41.) Thus, the ALJ does not adopt Mahoney's findings. Plaintiff argues that the ALJ erred in finding Mahoney's opinion to be generally persuasive, while also dismissing the findings. (Dkt. #19-1 at 23-24.) The Court disagrees.

18

With respect to the timing issue, Mahoney's records are dated one to two years after the Plaintiff's date last insured, December 31, 2021.(R. 40-41 (citing Exs. 4F; 5F; 7F).) Because Plaintiff is only filing a Disability Insurance Benefits application, the ALJ correctly points out that "she must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (R. 37; *see also Paul S. v. Kijakazi*, No. 3:20-CV-1662 (AVC), 2021 U.S. Dist. LEXIS 253056, at *2 n.3 (D. Conn. Nov. 16, 2021).) Importantly, "[a] medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period." *Patterson v. Comm'r of Soc. Sec.*, No. 1:18-cv-0566 (WBC), 2019 U.S. Dist. LEXIS 161161, at *14 (W.D.N.Y. Sept. 20, 2019) (collecting cases). Here, the first treatment note from Mahoney appears to be dated January 31, 2023, well after the date last insured of December 31, 2021. (R. 524) Likewise, the records from January and May of 2023 do not appear to be retrospective in nature.[8] *See* exs. 4F, 5F.

While the ALJ does note that in certain circumstances it can be reasonable to infer that evidence after the date last insured existed *prior* to the date last insured, he finds that the "overall

---

[8] One letter, dated November 14, 2023, references Plaintiff's complaints from 2021. (Ex. 7F at R. 772.) However, as noted herein, the ALJ rejected *all* of Mahoney's opinions for other errors, R. 41, and there is nothing to suggest that one retrospective reference is binding on the ALJ's analysis of Mahoney's opinions.

19

medical evidence, activities of daily living, and history of minimal or conservative treatment during the period at issue weigh against that inference." (R. 37.)

Plaintiff also claims that the ALJ improperly failed to articulate the precise amount of weight given to Mahoney's opinion evidence. (Dkt. #19-1 at 23-24.) However, "[a]n ALJ's failure to explicitly afford an opinion weight does not constitute error if the ALJ's weight determination can be inferred from the decision." *Goettel v. Comm'r of Soc. Sec.*, No. 18-cv-1285 (WBC), 2019 U.S. Dist. LEXIS 197768, at *9 (W.D.N.Y. Nov. 14, 2019). Here, the ALJ's decision includes an analysis of Mahoney's opinion from which the reader can infer that he assigned little to no weight to it. (R. 40-41) The ALJ summarized Mahoney's notes and opinions, but then explained the opinions' various errors—including the timing, lack of functional assessment, and inconsistency with the record. *Id.* at 41. From this, it is reasonable to infer that the ALJ does not endorse Mahoney's opinion, and the Court finds that the ALJ did not err in doing so.

In light of the ALJ's rejection of Mahoney's medical opinion, Plaintiff argues that the ALJ did not rely on any medical opinions in formulating the RFC, and that this constituted a failure to develop the record. (Dkt. #19-1 at 24.) An ALJ has an affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*,

20

94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Swiantek v. Commissioner*, 588 F. App'x 82, 83–84 (2d Cir. 2015). A court must remand "where 'the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate' the claimant." *Martinez v. Berryhill*, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting *Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)).

Courts within the Second Circuit have held that "it is not per se error for an ALJ to make a disability determination without having sought the opinion of the plaintiff's treating physician." *Delgado v. Berryhill*, No. 17-CV-54 (JCH), 2018 U.S. LEXIS 41745, at *23 (Mar. 13, 2018). It has been further held that when "the record contains sufficient evidence from which an ALJ can assess [a claimant's] residual functional capacity," the absence of treating source opinions will not require remand. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)(summary order). In *Angelica M.*, the Honorable Janet C. Hall noted that:

> According to the *Tankisi* court, the "sufficient evidence" standard evidence was at least met when the medical records were "extensive," "voluminous," and included "an assessment of [the claimant's] limitations from a treating physician." *Tankisi*, 521 F. App'x. at 34. In interpreting *Tankisi*, another Judge in this District has found that, "[i]n essence, [it] dictates

21

> that remand for failure to develop the record is situational and depends on the circumstances of the particular case, the comprehensiveness of the administrative record, and ... whether an ALJ could reach an informed decision based on the record. *Holt v. Colvin*, No. 16-CV-1971, 2018 WL 1293095, at \*7 (D. Conn Mar. 13, 2018)

*Angelica M. v. Saul*, No. 3:20-CV-00727 (JCH), 2021 U.S. Dist. LEXIS 130889 (D. Conn. July 14, 2021). Thus, the sufficiency of the evidence will turn on the underlying medical records that address a claimant's work limitations. *See id.* at \*5. It is worth nothing that:

> *Tankisi*, its progeny, and the case law interpreting the obligation of an ALJ to seek medical source statements to develop the record all deal with claims made when the old treating physician rule was in effect, and predate the introduction of the new regulations for considering medical opinions for claims filed on or after March 27, 2017. 20 C.F.R § 404.1520c; 20 C.F.R. § 404.1527.

*Id.* at \*6. Under the new regulation, the ALJ does not have to provide controlling weight or defer to a specific medical opinion, the inquiry is now focused on matters of supportability, consistency, and the relationship with the plaintiff. 20 C.F.R. § 404.1520c.

Here, there was sufficient evidence in the record from which the ALJ could assess Plaintiff's RFC. The record contains nearly 500 pages of medical records, including numerous treatment notes from providers at the APT Foundation and from psychological consultant Dr. Preston. (R. 311-772.) Plaintiff points to no evidence outside of the record that the ALJ failed to consider,

and Plaintiff does not specifically identify any gaps in the record that the ALJ should have addressed. *See* dkt. #19. The only claim Plaintiff appears to make in support of this argument is that the ALJ erroneously "assigned little or no weight to all of the medical opinions." *Id.* at 24. However, as discussed above, the ALJ is not required to assign a specific weight to any of the medical opinion evidence.

Finally, the Court turns to Plaintiff's claims that the ALJ's RFC determination does not account for time off-task or absenteeism. Dkt. #19-1 at 25, 28-29. In support of this argument, Plaintiff claims that Plaintiff needs to lie down at will and remain as static as possible, and thus the ALJ did not account for this work-preclusive factor. *Id.* at 28. In response, the Commissioner argues that substantial evidence rebuts this contention and demonstrates that Plaintiff remained functional throughout the relevant time period. (Dkt. #23 at 9.) On this point, the Court agrees with the Commissioner's line of reasoning.

Plaintiff argues that her conditions would bring her off-task due to her fatigue, vomiting, and dizziness. (Dkt. #19-1 at 29.) However, as discussed above, the ALJ rejected Dr. Mahoney's findings that Plaintiff's POTS symptoms prevent her from working in a "meaningful capacity" largely because that finding post-dated the DLI by nearly two years and did not provide a function-by-function assessment of Plaintiff's limitations. (R. 41 (citing Ex.

23

7F).) Additionally, "[e]ven if there were evidence in the record supporting a more restrictive RFC, the relevant question is whether substantial evidence supports the ALJ's decision." *Langston v. Comm'r of Soc. Sec.*, No. 21-CV-00723 (KAM), 2024 U.S. Dist. LEXIS 6204, at *32 (E.D.N.Y. Jan. 11, 2024) (internal quotations and citation omitted). Here, the ALJ reasonably arrived at the conclusion that Plaintiff could perform light work but must avoid: extreme temperatures (both cold and hot); ladders, ropes, and/or scaffolds; and she "cannot tolerate hazards such as chainsaws and open moving machinery." (R. 36.)

To conclude that Plaintiff can perform light work with these limitations, the ALJ repeatedly noted that the evidence from the APT Foundation shows that Plaintiff presented with a steady, coordinated gate and was managing symptoms. (R. 38) And while the ALJ acknowledged Plaintiff's reports that she experiences dizziness and fatigue, R. 37, the ALJ reasonably found these statements to be partially inconsistent with the record, as explained more fully above. *Id.* Thus, the ALJ did not err in declining to adopt greater or additional limitations or account for time off-task or absenteeism, and remand is not warranted on this basis.

As to the medical opinion evidence, the Court finds that the ALJ properly evaluated the available opinions for supportability and consistency and that those determinations are supported by

24

substantial evidence. The medical opinions were based on either a review of the medical record, or an examination of Plaintiff. Contrary to plaintiff's arguments otherwise, the ALJ did not craft the RFC by "playing doctor," dkt. #19-1 at 25, the record was not vague, and the record did not contain a gap in need of additional medical opinions. The ALJ relied on sufficient medical evidence, including one medical opinion, which assessed Plaintiff to be functionally able to work light jobs. The ALJ took those assessments, reviewed the medical treatment records, and concluded that the RFC should include some further restrictions to fully account for Plaintiff's conditions and alleged symptoms.[9]

Having determined that the ALJ properly evaluated the evidence in the record to determine that Plaintiff's allegations of symptoms are not supported by the medical evidence, and further, that the ALJ did not err in evaluating the medical opinion evidence, it is clear that the ALJ did not substitute his own judgment for that of a medical expert.

---

[9] As a final matter, Plaintiff appears to briefly argue that the ALJ's hypotheticals directed towards the Vocational Expert at the hearing should have become binding on the RFC determination. (Dkt. #19-1 at 29.) Plaintiff specifically makes this argument in the context of off-task behavior and absenteeism. *Id.* However, "[t]he ALJ is free to pose a hypothetical question to a vocational expert regarding a limitation and later implicitly reject the basis for the hypothetical by omitting the limitation from the claimant's RFC so long as the ALJ's assessment is sound in that regard." *Taylor v. Comm'r of Soc. Sec.*, 711 F. Supp. 3d 148, 161 (E.D.N.Y. 2024) (cleaned up). Because the Court here finds that the ALJ's decision (including all limitations) was properly supported by substantial evidence, Plaintiff's argument on this point is not persuasive.

"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." *Bonet v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013) (summary order). Here, the Court is satisfied that it does. Given the totality of the ALJ's discussion regarding the medical opinion evidence, the Court is satisfied that the ALJ properly assessed the persuasiveness of the medical opinion evidence in formulating the plaintiff's RFC. Upon review of the opinion the Court is able to follow the ALJ's logic and meaningfully review the decisions and the RFC. As such, remand would not be appropriate.

<u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion for an Order Reversing or Remanding the Commissioner's Decision (Dkt. #19) is DENIED and the Commissioner's Motion to Affirm the Decision (Dkt. #24) is GRANTED. This is not a recommended ruling. The consent of the parties allows this Magistrate Judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3).

It is so ordered this **27th** day of **March 2026,** at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge
